UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY L. DAIGNEAULT, | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-04-cv-984 (JCH) |
| | : | |
| EATON CORPORATION, | : | FEBRUARY 11, 2008 |
| Defendant | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 115]; PLAINTIFF'S
MOTION FOR RECONSIDERATION [Doc. No. 112]; PLAINTIFF'S MOTION FOR
DECLARATORY JUDGMENT [Doc. No. 119]; PLAINTIFF'S MOTION FOR
PERMISSION TO BRING LAPTOP COMPUTER INTO COURT [Doc. No. 113];
DEFENDANT'S MOTION TO CONSOLIDATE [Doc. No. 91]; DEFENDANT'S MOTION
TO STAY BRIEFING [Doc. No. 121]**

Defendant Eaton Corporation ("Eaton") has filed a Motion to Dismiss [Doc. No.

115] the pro se Amended Complaint filed by plaintiff Larry Daigneault.  For the reasons

that follow, the court **GRANTS** that Motion.  In addition, the court disposes of several

other pending motions, as discussed below.

**I.     BACKGROUND**

The operative complaint in this case is the Amended Complaint Daigneault filed

on September 13, 2004.[1]  See Doc. No. 24.  The court describes the facts as set out in

that Complaint, drawing all factual inferences in the plaintiff's favor.  See Yung v. Lee,

432 F.3d 142, 146 (2d Cir. 2005).  The facts "set out in the Complaint" include those

_____

[1] In October 2006, Daigneault filed a separate federal lawsuit against Eaton, as
well as several other defendants, based on events that overlap significantly with the
events described in the Amended Complaint.  That separate lawsuit is pending before
this court in case 06-cv-1690, and it is the subject of a separate Ruling issued this
same date.

facts in documents attached to the Complaint as exhibits, or incorporated into the

Complaint by reference.  See id.

Daigneault was an employee of Eaton until 1998.  In April 1998, when he was 45

years old, he was terminated.  Daigneault responded by filing a seven count Complaint

in Connecticut Superior Court against Eaton and several of its managers.[2]  Some of

these claims were dismissed on summary judgment, but three counts survived: a claim

for wrongful discharge based on protected employee speech, see Conn. Gen. Stat.

§ 31-51q, a "tortious interference" claim, and an assault claim.  Amended Compl. ¶ 25.

On October 28, 2003, the day before jury selection was scheduled to begin, the

parties held a non-binding mediation session.  Id. ¶ 26.  Plaintiff was represented by

counsel, and the parties entered into a "tentative" settlement.  Id. ¶ 27.  Apparently, the

settlement would have released Eaton from liability for any and all potential claims

arising out of Daigneault's employment with Eaton.  See Doc. No. 2-2 at 2.[3]  In

exchange, Eaton was to pay Daigneault $38,000.  During settlement negotiations,

---

[2] It is not clear from Daigneault's federal Complaint whether any of these seven counts in the state case included a claim based on the Age Discrimination in Employment Act ("ADEA").

[3] Technically, this agreement was not physically filed along with the Amended Complaint, but was instead filed along with a Motion for Preliminary injunction that Daigneault filed on the same day he filed his original Complaint.  Nonetheless, the Amended Complaint appears to refer to this exhibit.  See, e.g., Amended Compl. at ¶ 55 (referring to the settlement agreement as "Exhibit A").  The defendants do not appear to be prejudiced by any consideration of the text of the agreement, and the court deems the agreement sufficiently incorporated in the Amended Complaint such that it may be considered in evaluating the defendant's Motion to Dismiss.

Daigneault made it clear to Eaton that he would only agree to a settlement if the agreement contained no "gag clause." Id. ¶ 28.

The next day, Daigneault's attorney notified the Superior Court that there had been a tentative settlement. The court ordered Daigneault to file a withdrawal of the action before the end of the day, with the stipulation that the case would be reopened if the settlement fell through. Daigneault's attorney complied. Id. ¶¶ 29-30.

Shortly thereafter, the settlement fell through when Daigneault decided that "the moral distress caused by agreeing to sign was too much to bear." Id. ¶ 31. Several days after that, Daigneault received a paper copy of the settlement agreement, but he did not read most of it initially, and he did not notice that it contained a "gag clause." Id. ¶¶ 32, 55. Based on the "moral distress" that he would experience from signing, Daigneault chose not to sign the settlement, and he instead had his attorney file a motion to re-open the state court case. Id. ¶ 35. Following the filing of that Motion, Daigneault elected to pursue his state case pro se. Id. at ¶ 37.

Eaton opposed the motion, claiming that Daigneault had "voluntarily" withdrawn his case, and that in any event he lacked good cause for reopening. Id. ¶¶ 38-39. Additionally, Eaton falsely asserted to the court that the settlement had not been a tentative one. Id. ¶ 47. The Superior Court denied Daigneault's Motion to Reopen. Id. ¶ 50. Notwithstanding a flurry of motions attempting reconsideration (or something similar to it), the state courts refused to re-open Daigneault's case. Id. ¶¶ 51-69. Daigneault never received any money from Eaton. Id. ¶ 46.

On June 16, 2004, while one of Daigneault's reconsideration-like motions was pending in the Superior Court, Daigneault filed a Complaint in this case, in federal court, seeking relief related to his pending state court matter.  That relief was denied.  7/8/04 Order [Doc. No. 11].  Several months later, Daigneault filed the instant Amended Complaint.  Doc. No. 24.  The Amended Complaint merely contains a recitation of facts related to the state court action, and does not clearly articulate any specific legal claims for relief.  See generally id.

This court interpreted the Amended Complaint as merely stating claims that "arise out of, and are inextricably intertwined with, decisions of the Connecticut Superior Court."  8/25/05 Ruling [Doc. No. 69] at 3.  Accordingly, on August 25, 2005, this court dismissed the Amended Complaint as barred by the Rooker-Feldman doctrine.  See id. at 4-5.

Daigneault appealed, and the Second Circuit reversed this court's Rooker-Feldman ruling.  The Second Circuit explained:

> Daigneault's amended complaint filed in the district court sought damages against Eaton for its alleged improper conduct during prior state court proceedings, including, inter alia, bargaining in bad faith, coercing Daigneault to sign an illegal settlement agreement, and attempting to enforce the illegal agreement. . . . . Because Daigneault's district court complaint did not reassert the underlying claims pleaded in his state court complaint and ostensibly decided in his prior state court proceedings, and because, when the federal complaint was filed . . . the state court proceedings had not [finished], the requirements for the application of Rooker-Feldman were not met. . . . Because the only basis for the district court's dismissal of Daigneault's amended complaint was the Rooker-Feldman doctrine, the judgment

4

> of the district court must be vacated and the case remanded
> for further consideration, including in the first instance any
> additional arguments made by the parties as to whether or
> not the amended complaint should be dismissed.

Daigneault v. Eaton Corp., 242 Fed. Appx. 761, 763 (2d Cir. 2007).  The Second Circuit

was careful to stress that the Amended Complaint "only sought damages" against

Eaton, id. at 762, and it made clear that Daigneault could not obtain any other relief.

See id.

       With the case now remanded, Eaton has filed a Motion to Dismiss.  Doc. No.

115.  Eaton contends that Daigneault's Amended Complaint only articulates state law

claims of breach of contract, and fraud or fraud in the inducement, and Eaton maintains

that Daigneault cannot maintain these claims on the facts alleged.  Id. at 4.

## II.      DISCUSSION

       Given the somewhat confusing nature of Daigneault's Amended Complaint, the

court understands why Eaton believes that Daigneault is asserting various state law

theories of relief.  However, in his Opposition, Daigneault contends that all of his claims

for relief arise under the Age Discrimination in Employment Act ("ADEA"), as amended

by the Older Workers Benefits Protection Act ("OWBPA").  Doc. No. 117.  He

specifically argues that the court should recognize his claim as one based on 29 U.S.C.

§ 626(c)(1).  See id. at 24.  In Daigneault's view, the OWBPA creates federal causes of

action for breach of contract, id. at 12, the tort of fraudulent inducement, id. at 16, and

the tort of fraud on the court, id. at 21.   Daigneault specifically disavows any state law

contract-based claim to enforcement of the settlement agreement.  See id. at 7-8

("Plaintiff messed up the format of the Amended Complaint, but he did not claim breach of contract as to the $38,000."); see also id. at 8, 12-13 (explaining that Daigneault has not brought any state common law claims because he believes they are all preempted by the OWBPA).[4]

In Daigneault's view, Eaton's actions during the state court proceedings "violated" the OWBPA because Eaton did not give Daigneault sufficient time to consider the settlement offer. The settlement offer required Daigneault to waive any ADEA claim he might have had against Eaton, and under the OWBPA "[a]n individual may not waive any right or claim under" the ADEA unless certain procedures are followed – procedures that Daigneault believes were not complied with. See 29 U.S.C. § 626(f).

Daigneault may well be correct that these procedures were not followed. And

---

[4] The court finds Daigneault's disavowal somewhat surprising, as plaintiff might well have a breach of contract claim under state law: plaintiff could invoke the doctrine of judicial estoppel to create a binding contract, and then claim that Eaton owed him the $38,000 it had promised under that contract. Cf. New Hampshire v. Maine, 532 U.S. 532 U.S. 742, 749-52 (2001) (recognizing the principle, under federal law, that a party can be estopped from making an argument if that party has successfully advocated a contrary position in a prior judicial proceeding); but cf. SKW Real Estate P'ship v. Mitsubishi Motor Sales of Am., Inc., 741 A.2d 4, 8 (Conn. App. Ct. 1999) (declining to decide whether or not judicial estoppel is a recognized doctrine under Connecticut law). However, the court cannot force Daigneault to articulate a claim for relief that he does not wish to bring. Indeed, this breach of contract claim would require Daigneault to argue that the settlement agreement did create a binding contract, a position Daigneault appears unwilling to advocate.

In any event, such a breach of contract claim might well create jurisdictional problems. The claim would arise solely under state law, and if Daigneault attempted to base jurisdiction on diversity of citizenship, the amount in controversy would likely not exceed $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332. Indeed, if the settlement agreement was binding on the parties, then Daigneault's recovery would likely be limited to $38,000, plus interest and costs.

thus if Daigneault had later brought an ADEA claim against Eaton, Eaton might well be unable to claim that Daigneault had waived his right to bring such a suit.  See Oubrey v. Entergy Operations, Inc., 522 U.S. 422, 526-427 (1998).  Where Daigneault errs is in his contention that the waiver provision creates an affirmative cause of action for damages.[5]

Daigneault relies on 29 U.S.C. § 626(c)(1), which is the ADEA's civil enforcement provision, and which authorizes individuals to "bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act."  But despite this seemingly broad remedial language, ADEA remedies are actually quite limited.  See 29 U.S.C. § 626(b) (explaining that ADEA remedies are limited to the remedies available under the Fair Labor Standards Act).  Importantly, the ADEA does not permit recovery for the kind of consequential damages Daigneault apparently seeks.  See Comm'r v. Schleier, 335-36 (1995) (explaining that the ADEA is not like traditional "tort-type" statutes, and noting that the only monetary remedies available under the statute are backpay and liquidated damages); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 147-48 (2d Cir. 1984).

---

[5] There are likely other reasons why Daigneault's claim would fail.  For instance, Daigneault's alleged cause of action would arise under the ADEA, and thus would almost certainly be subject to the ADEA's exhaustion requirements and time limitations. See 29 U.S.C. § 626(d).  These requirements appear not to have been met in this case. Additionally, it strikes the court as highly unlikely that the ADEA is the kind of statute that would displace state-law causes of action in favor of an amorphous federal common law.  There is no language in the ADEA to that effect, nor is there a particularly strong interest in federal uniformity that would lead to that result.  Cf., e.g., O'Melveny & Myers v. FDIC, 512 U.S. 79, 87-88 (1994).

Additionally, it is plain from the statutory structure that Congress enacted the waiver provision as a shield for employees to use against an argument that they had waived their rights; the provision is not a sword to use as an affirmative claim. Notably, the ADEA's substantive anti-discrimination provisions begin by declaring that certain practices "shall be unlawful." 29 U.S.C. § 623(a), (b), (c), (d), (e), (i)(1). By contrast, the waiver provision contains no such language. Instead, its operative language merely states that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." Id. § 626(f)(1). The court concludes that the waiver provision operates to make certain ADEA waivers unenforceable, but does not create a private right of action for damages by a worker who claims he signed a waiver that is unenforceable.

There is yet another problem with Daigneault's claims. Daigneault believes that, because the settlement agreement contained an ADEA waiver, it was governed by the provision of the OWBPA which required him to have at least 21 days to consider whether or not he would agree to the settlement. See 29 U.S.C. § 626(f)(2)(F)(I). Accordingly, he reasons, before those 21 days had expired Eaton could not and should not have argued to the Superior Court that the parties had a binding settlement. Eaton's improper argument, in his view, gives rise to some sort of "OWBPA federal common law claim." See Doc. No. 117 at 7-23.

Even assuming that the court somehow could create OWBPA federal common law, this misses the point. According to Daigneault's allegations, see Amended Compl.

8

¶¶ 27-33, and according to the draft agreement, see Doc. No. 117-4 at 2-3, 5, no final

settlement had been reached under the terms of the agreement itself.  Thus when

Eaton told the Superior Court that the case had finally settled, one need look no further

than the terms of the agreement itself to determine that Eaton's statement was

fraudulent.  Eaton's action was thus so divorced from the OWBPA that it would be

nonsensical for there to be some sort of OWBPA federal common law that would give

Daigneault relief.[6]

For the above reasons, the court concludes that Daigneault's Amended

Complaint fails to state a claim upon which relief can be granted.  Defendant's Motion to

Dismiss [Doc. No. 115] is **GRANTED**.

## III.    OTHER MOTIONS

Several other Motions are still pending on the docket.

First, Daigneault has filed a Motion to Reconsider [Doc. No. 112] an earlier

decision of this court, see Doc. No. 106, denying Daigneault's Motion to Order Tender

of Consideration [Doc. No. 88].  In that earlier Motion, Daigneault sought an order

compelling Eaton to tender him $38,000, purportedly under the authority of 29 C.F.R.

§ 1625.23(a).  The court denied this order on the grounds, among others, that

Daigneault was prematurely asking for judgment at a time when his Amended

---

[6] Of course, it may well be that compliance with OWBPA's waiver provision was what motivated the parties to draft an agreement that explicitly gave Daigneault 21 days to decide whether or not he would agree to the settlement.  See Doc. No. 117-4 at 2-3. But that does not change the fact that the agreement, by its own terms, was not yet final at the time Daigneault decided not to sign.

Complaint was still subject to a Motion to Dismiss. There is no reason to revisit that ruling. In any event, 29 C.F.R. § 1625.23(a) is inapplicable. The regulation merely states that, when an individual has been given consideration in exchange for an ADEA waiver, the individual need not return the consideration before bringing an ADEA claim if he asserts that the waiver is invalid under the OWBPA. Daigneault was never given the $38,000, and so this regulation has no bearing on his lawsuit. The court **DENIES** the Motion for Reconsideration.

Daigneault has also filed a Motion for Declaratory Judgment [Doc. No. 119]. However, the Second Circuit's opinion made clear that Daigneault's Amended Complaint sought only a damages remedy. Daigneault, 242 Fed. Appx. at 762. While Daigneault may not agree with the Second Circuit's ruling, that ruling is binding on this court. In the alternative, Daigneault requests this court to order the EEOC to intervene in Daigneault's state court litigation. Doc. No. 119 at 23-24. The court declines to do so: inter alia, the EEOC is not a party to this lawsuit, and so the court cannot order it to do anything. The court **DENIES** Daigneault's Motion.

Two remaining motions filed by Eaton, a Motion to Consolidate this case with another, see Doc. No. 91, and a Motion to Stay Briefing, see Doc. No. 121, and Daigneault's outstanding Motion for Permission to Bring Laptop Computer Into Court, see Doc. No. 113, are **DENIED AS MOOT**.

IV.   **CONCLUSION**

Defendant's Motion to Dismiss [Doc. No. 115] is **GRANTED** and the case is

**DISMISSED**.  Plaintiff's Motion for Reconsideration [Doc. No. 112] is **DENIED**.

Plaintiff's Motion for Declaratory Judgment [Doc. No. 119] is **DENIED**.  Plaintiff's Motion

for Permission to Bring Laptop Computer Into Court [Doc. No. 113] is **DENIED AS**

**MOOT**.  Defendant's Motion to Consolidate [Doc. No. 91] is **DENIED AS MOOT**.

Defendant's Motion to Stay Briefing [Doc. No. 121] is **DENIED AS MOOT**.

**SO ORDERED.**

       Dated at Bridgeport, Connecticut, this 11th day of February, 2008.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge